UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

GREGORY IMBRUCE,
    *Plaintiff*,

v.

TERI BUHL and
MARKETNEXUS MEDIA, INC.,
    *Defendants*.

No. 3:15-cv-00554 (JAM)

**RULING ON PENDING MOTIONS**

Plaintiff Gregory Imbruce brings this action against defendants Teri Buhl and MarketNexus Media, Inc. ("MarketNexus") for allegedly defamatory statements they made on the Internet. For the reasons that follow, I will deny plaintiff's motion to remand. I will grant Buhl's motion to dismiss for improper service of Buhl. I will otherwise deny defendants' claims of lack of personal jurisdiction. I will also deny defendants' motion to dismiss for failure to state a claim. And I will deny defendants' motion to strike without prejudice to renewal at a later time in the event defendants are able to demonstrate prejudice.

**BACKGROUND**

Plaintiff Gregory Imbruce allegedly has extensive experience investing in distressed companies. He contends that defendants Teri Buhl and MarketNexus disparaged him and his investment activities on various websites and in electronically published reports. He alleges three state law causes of action against defendants for per se libel, per se defamation-libel, and publicly placing another in false light.

Plaintiff filed this action in Connecticut Superior Court in March 2015. Defendants timely removed the action to this Court, alleging that there is federal diversity jurisdiction. Plaintiff is a citizen of Connecticut, and defendants alleged that at the time of the filing of the

action Buhl was a citizen of New York (notwithstanding a prior domicile in Connecticut) and that MarketNexus was a citizen of California.

On August 13, 2015, the Court held an evidentiary hearing for the purpose of determining facts necessary to consider defendants' challenges to the adequacy of the service of process and to determine Buhl's state-of-citizenship for diversity jurisdiction purposes. Buhl testified that she moved to New York from Connecticut in September 2014, some months prior to the filing of this action. Although her website (*www.teribuhl.com*) at one point listed her residence as Connecticut, she currently lives and works in New York and intends to remain there indefinitely. She does not own property or have a driver's license in Connecticut. She travels back to New Canaan, Connecticut approximately once a week to visit a dog that she shares with her former landlord, Michael Vitiello. She leaves running shoes and a coat at Vitiello's home for the times when she walks the dog. She is litigating a misdemeanor charge in Connecticut but she is not required to remain in Connecticut in connection with this charge.

To the same effect, Vitiello testified that he is Buhl's friend and former landlord. He testified that Buhl moved out in September 2014 and that she has not had a key since moving out, but that she occasionally receives mail at his residence. According to Vitiello, Buhl comes to the house about once a week to take care of his dogs and to pet sit on long weekends when his sister is not available. Vitiello recalled finding certain service-of-process documents for Buhl that were left in the front door of his house at some point after Buhl had already moved to New York.

Connecticut state marshal Joan Melhorn testified that she was hired to serve the complaint on Buhl in this case. She was originally given an obsolete address for Buhl, but she

later served the complaint on Buhl by leaving the paperwork jammed between the front door and frame of Vitiello's house in New Canaan.

Connecticut state probation officer Edward Conway testified that he supervised Buhl in connection with a pending misdemeanor charge against her. Buhl told him in February 2015 that she was seriously considering moving to New York, and he said that she could do so. He further testified that the only stipulation that Buhl had pending the appeal of her misdemeanor conviction was to notify probation if she traveled outside of the tri-state area for employment. At some point in August 2015, Buhl gave Conway a New York address where she now lived.

## DISCUSSION

The parties have filed various motions. Each one is considered in turn.

### *Plaintiff's Motion to Remand to State Court*

Plaintiff moves to remand this action back to Connecticut state court on the ground that Buhl was a citizen of Connecticut when this action was filed. Federal diversity jurisdiction requires complete diversity of citizenship and is not satisfied if any one plaintiff is a citizen of the same state as any one defendant. *See, e.g., Hallingby v. Hallingby*, 574 F.3d 51, 56 (2d Cir. 2009). Citizenship is determined as of the date the suit was filed. *See Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 62 (2d Cir. 1999) ("Satisfaction of the § 1332(a) diversity requirements (amount in controversy and citizenship) is determined as of the date that suit is filed—the 'time-of-filing' rule."). For purposes of federal diversity jurisdiction, the citizenship of a natural person is determined by reference to the person's domicile—that is, "the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000).

Here, it is clear to me from the record and on the basis of the credible testimony of Buhl, Vitiello, and Conway at the evidentiary hearing that—notwithstanding Buhl's prior domicile in Connecticut—Buhl was domiciled in New York at the time that this action was filed in March 2015 and when it was removed to this Court in April 2015. Accordingly, I will deny plaintiff's motion to remand, because federal diversity jurisdiction exists in this case.

### *Motion to Dismiss for Improper Service of Defendant Buhl*

Defendant Buhl moves to dismiss all claims against her pursuant to Fed. R. Civ. P. 12(b)(5) for failure to properly execute service of process. As noted above, a Connecticut state marshal attempted to effectuate service upon Buhl by leaving process at a house in Connecticut where Buhl no longer lived. Whether judged by service-of-process standards under Connecticut law or federal law, this service of process was not adequate.

Under Connecticut law, service of process on a non-resident of Connecticut who is otherwise subject to the jurisdiction Connecticut courts may be effectuated only through personal service, through leaving service documents at the defendant's usual place of abode, or by following nonresident service procedures involving service upon the Connecticut Secretary of State. *See Sentementes v. Gen. Elec. Co.*, 2014 WL 2881441, at *4 (D. Conn. 2014) (citing Conn. Gen. Stat. §§ 52–57(a) & 52-59b(c)); *see also* Conn. Gen. § 52-57(a); *Anderson v. Schibi*, 33 Conn. Supp. 562, 567 (Super. Ct. 1976). Service of a defendant by means of process left at a home where defendant no longer lives is not sufficient service of process. *See Sentenmentes*, 2014 WL 2881441, at *4 (citing *Doe v. Town of East Haven*, 2008 WL 1735409 (Conn. Super. Ct. 2008)).

Rule 4 of the Federal Rules of Civil Procedure provides in relevant part that a plaintiff may effectuate service under state law, or by doing any of the following:

> **(A)** delivering a copy of the summons and of the complaint to the individual personally;
> **(B)** leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
> **(C)** delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e). It is evident from these requirements that plaintiff's efforts to serve process met neither the state nor federal standards. Buhl was purportedly served process at a home where she no longer lived. Because plaintiff did not properly serve process on Buhl, plaintiff's claims against Buhl will be dismissed.

### *Motions to Dismiss for Lack of Personal Jurisdiction*

Both defendants Buhl and MarketNexus move to dismiss for lack of personal jurisdiction over them in the District of Connecticut. When facing an objection to personal jurisdiction, a plaintiff bears the burden of demonstrating that the Court has jurisdiction over a nonresident defendant. *See, e.g., Troma Entertainment Inc. v. Centennial Pictures Inc.,* 729 F.3d 215, 217 (2d Cir. 2013). A plaintiff must show not only that a defendant is subject to long-arm jurisdiction under the state law of the forum state, but also that the exercise of jurisdiction comports with constitutional due process. *See, e.g, Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015).

As to Buhl, Connecticut's long-arm statute—Conn. Gen. Stat. § 52-59b—specifies several circumstances when a non-resident individual defendant may be subject to the long-arm jurisdiction of Connecticut courts for causes of action that sound in tort.[1] Among such

---

[1] Conn. Gen. Stat. § 52-59b(a) provides in full: "As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual, foreign partnership or foreign voluntary association, or over the executor or administrator of such nonresident individual, foreign partnership or foreign voluntary association, who in person or through an agent: (1) Transacts any business within the state; (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; (3) commits a tortious act outside the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if such person or agent (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have

circumstances, a defendant may be subject to long-arm jurisdiction if she "transacts any business within the state" of Connecticut. Conn. Gen. Stat. § 52-59b(a)(1). Notwithstanding the use of the present tense in this statute ("*transacts*"), courts look to whether the defendant *transacted* business in Connecticut at the time of the conduct that is the subject of a complaint. *See, e.g., Ryan v. Cerullo*, 282 Conn. 109, 119 (2007) ("under § 52–59b (a)(1), a court possesses personal jurisdiction over a nonresident individual with respect to a cause of action arising from any business transacted in this state by that individual").[2] Although Buhl no longer lives in Connecticut, the complaint and record reflect that she did live in Connecticut, and apparently did work, at times, from a location in Connecticut at the time of the conduct that is the subject of the complaint. *See* Doc. #8 (website posting for *www.teribuhl.com* stating "I live in lower Fairfield County, CT").

It is a fair inference from this that she transacted business in Connecticut involving the operation of her website at the time of the conduct that forms the basis for the complaint. She is therefore within the scope of the long-arm statute. For the same reason—because of her operations in Connecticut in connection with the Internet postings that are the subject of this complaint—there is valid specific jurisdiction over her for constitutional due process purposes. *See, e.g., Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016) ("Specific jurisdiction is available when the cause of action sued upon arises out of the defendant's activities in a state."). Accordingly, assuming that Buhl may be subject in the future to valid

---

consequences in the state and derives substantial revenue from interstate or international commerce; (4) owns, uses or possesses any real property situated within the state; or (5) uses a computer, as defined in subdivision (1) of subsection (a) of section 53-451, or a computer network, as defined in subdivision (3) of subsection (a) of said section, located within the state."

[2] Indeed, other provisions of the long-arm statute also use the present tense to describe a potential defendant's connections to Connecticut.

service of process, this Court would have personal jurisdiction over Buhl for the purposes of this action.

As to MarketNexus, a different long-arm statute applies—Conn. Gen. Stat. § 33-929(f)—because MarketNexus is a foreign corporation and not an individual/natural person.[3] Plaintiff relies on a portion of this statute that allows for jurisdiction over a suit brought by a resident of Connecticut "on any cause of action arising … (4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance." § 33-929(f)(4).

If a company that is outside Connecticut posts damaging statements to its website about a person in Connecticut, does this conduct constitute "tortious conduct in this state" to qualify for long-arm jurisdiction under § 33-929(f)(4)? This issue of statutory interpretation has not been settled by the Connecticut Supreme Court.

If the issue were a matter of first impression, I might be inclined to say that whatever wrongful acts that a company (*i.e.,* its agents and employees) may engage in that occur outside the state of Connecticut do not constitute "tortious conduct in this state," notwithstanding that such wrongful acts may target, affect, or harm a person who is in Connecticut. Indeed, some precedent in this District supports this interpretation—an interpretation of the term "tortious conduct in this state" that focuses on where the tortfeasor's physical actions took place rather

---

[3] Conn. Gen. Stat. § 33-929(f) provides in full: (f) Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows: (1) Out of any contract made in this state or to be performed in this state; (2) out of any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or without the state; (3) out of the production, manufacture or distribution of goods by such corporation with the reasonable expectation that such goods are to be used or consumed in this state and are so used or consumed, regardless of how or where the goods were produced, manufactured, marketed or sold or whether or not through the medium of independent contractors or dealers; or (4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance.

than where they resulted in harm. For example, Judge Blumenfeld—in the course of interpreting identical terms in a predecessor statute to § 33-929(f) and surveying precedent examining similar statutes in other jurisdictions—observed that "where the defendant acted was determinative of a refusal to exercise jurisdiction" under these long-arm statutes. *Southern New England Distributing Corp. v. Berkeley Finance Corp.*, 30 F.R.D. 43, 47 (D. Conn. 1962). Thus, Judge Blumenfeld concluded that "[i]n the Connecticut statute, the emphasis is unmistakably upon the *place where* the tortious conduct occurred" and that the statute "requires tortious *conduct in this state*." *Ibid.* (emphasis in original).[4]

Other decisions have similarly followed this place-of-defendant's-physical-acts approach. *See, e.g., American Wholesalers Underwriting, Ltd. v. American Wholesale Insurance Group, Inc.*, 312 F. Supp. 2d 247, 253-54 (D. Conn. 2004) (noting that "[p]laintiff cites authority for the proposition that, because the injury is felt in Connecticut, the tort should be deemed to have been committed in Connecticut" but that this "[t]his argument ignores the language of § 33-929(f)(4)"); *Bross Utilities Service Corp. v. Aboubshait*, 489 F.Supp. 1366, 1373 (D. Conn. 1980) (Cabranes, J.) (long-arm statute "is limited to tortious conduct committed within Connecticut").

The place-of-defendant's-physical-acts approach draws further support from a comparison of Connecticut's foreign *corporate* long-arm statute (§ 33-929(f)) to its foreign *individual* long-arm statute (§ 52-59b(a)(1)). The individual long-arm statute expressly provides not only for long-arm jurisdiction over a defendant who "commits a tortious act within the state" but also over a defendant who "commits a tortious act outside the state causing injury to person or property within the state." Conn. Gen. St. § 52-59b(a)(2)-(3). Because the Connecticut

---

[4] The predecessor long-arm statute to Conn. Gen. Stat. § 33-929(f) was Conn. Gen. Stat. 33-411(c), which contained identical language requiring "tortious conduct in this state."

General Assembly did not draft the corporate long-arm statute in terms as broad as the individual long-arm statute, it is reasonable—as Judge Cabranes has noted—to interpret the corporate long-arm statute to require that a defendant's own tortious acts to have been done within Connecticut. *See Bross*, 489 F. Supp. at 1373 n.35.

Still, the nature of the tort here—libel—could have been understood by the long-arm statute's drafters not to be complete until the moment of distribution that occurs within Connecticut and with ensuing harm there. Thus, as Judge Friendly suggested in a libel case by a Connecticut resident against editorials that appeared in the New York Post, the drafters of the Connecticut corporate long-arm statute may well have considered the "distribution of a libel of a resident to constitute tortious conduct in the state" and that "damage to a person's reputation caused by sending a libel into the state where he lives could still be considered as arising from 'tortious conduct' in that state." *Buckley v. New York Post Corp.*, 373 F.2d 175, 178-79 (2d Cir. 1967) (applying Conn. Gen. Stat. § 33-411(c)(4), predecessor statute to § 33-929(f)(4) with identical language). Accordingly, the Second Circuit in *Buckley* ruled that the long-arm statute conferred personal jurisdiction over the New York newspaper company because "it would seem hard to deny that distributing two thousand copies of a libel about a resident in Connecticut is 'tortious conduct in this state,' under any ordinary meaning of those words" as used in Connecticut's foreign corporation long-arm statute. *Id.* at 178.

Then again, a case like *Buckley* involving physical distribution within Connecticut of newspapers that were published in the first instance in New York is different than the case presented here: the posting of information in California on an Internet website that was viewable in Connecticut. The cases are different because, in contrast to cases involving physical printing

9

and distribution of newspaper, it is difficult to characterize in physical terms the exchange of information on the Internet.

When a person sitting in Connecticut views a defendant's Internet webpage that has been generated by the defendant outside Connecticut and hosted on an out-of-state computer server, has there been a "distribution" of information in Connecticut at all? On one account, the answer could be "yes," because it could be supposed that the out-of-state computer server essentially acts like an old-time television or radio tower that outwardly "broadcasts" its content all over the world.

On another account, however, the answer could be "no," because it could be supposed that it is the Connecticut-based viewer who reaches out in the first instance to "access" information content that is stored on the out-of-state computer server.[5] This would be akin to a viewer in Connecticut who chooses to use a telescope to read a libelous newspaper that has been pasted to a wall across the state line in New York. For this latter example, where a Connecticut plaintiff has reached out to retrieve information from out of state, it is difficult to conclude that a foreign defendant has engaged in any tortious conduct within Connecticut.

Of course, all these examples rely on an analogy between our observable physical world and the electronically invisible operation of the Internet. And this raises the question—because of the uncertain application of such physical analogies to the mysteries of the Internet—whether the interpretation of the long-arm statute in the Internet "conduct" context should depend on the

---

[5] Thus, for web-based email services—such as Gmail, Hotmail, and Yahoo mail—a user does not "receive" email to her personal computing device; instead, she uses her personal device to access email that is stored and reviewed in the first instance on a remote computer server. *See, e.g.,* Achal Oza, *Amend the Ecpa: Fourth Amendment Protection Erodes As E-Mails Get Dusty*, 88 B.U.L. Rev. 1043, 1053-54 (2008); Craig Ball, *A Practical Guide to E-Mail Discovery Do You Know What to Ask for When Seeking A Defendant's E-Mail Records? Learning Which Technology Propels E-Mail Systems and Where Messages Are Stored Is the First Step*, Trial, October 2005, at 31 (2005).

location where physical acts have taken place. *See, e.g.,* Mark A. Lemley, *Place and Cyberspace*, 91 Cal. L. Rev. 521 (2003).

In any event, I conclude that the Connecticut Supreme Court would most likely interpret § 33-929(f)(4) to extend long-arm jurisdiction to MarketNexus in this case. MarketNexus's postings include defamatory statements that specifically reference plaintiff and his conduct of business operations in Connecticut. *See* Doc. #24 at 8-9 (First Amended Complaint, ¶¶ 29c, 30a, 30c, 30j).

The Connecticut Supreme Court has otherwise applied the corporate long-arm statute to a company that transmitted by telephone and postal mail allegedly fraudulent representations into Connecticut. *See Knipple v. Viking Commc'ns*, 236 Conn. 602, 610 (1996); *see also Planned Furniture Promotions, Inc. v. City Antique, Inc.,* 2014 WL 5481438, at *6 (D. Conn. 2014). Apart from whether it could be said that there is a physical difference between "transmitting" information into Connecticut (as in *Knipple*) or "posting" such information such that it is readily accessible in Connecticut (as on the facts here), the *Knipple* decision suggests to me that the Connecticut Supreme Court would not interpret § 33-929(f)(4) solely by reference to where a defendant's own physical acts took place if it is shown—as here—that those acts were targeted at causing harm inside Connecticut. Thus, as the Second Circuit has observed, "[w]hile the prevailing precedents do not uniformly require the defendant's literal presence in Connecticut when engaging in the actionable conduct, they do insist that a defendant's tortious conduct be directly and expressly targeted at the forum state." *Gen. Star Indemn. Co. v. Anheuser-Busch Companies, Inc.*, 199 F.3d 1322 at *1 (2d Cir. 1999) (citing *Knipple*).

All this convinces me that long-arm jurisdiction under § 33-929(f)(4) exists over a foreign corporate defendant who posts information to the Internet that targets persons known by

11

a defendant to live in Connecticut and by reference to their activities in Connecticut. *See Directory Assistants, Inc. v. LK Jordan & Associates*, 2013 WL 869671, at *3 (D. Conn. 2013) (Texas company and resident that posted negative comments on a website about a Connecticut company and mentioning Connecticut activities of the resident was subject to personal jurisdiction in Connecticut pursuant to § 33-929(f)(4)); *cf. Doe v. Ciolli*, 611 F. Supp. 2d 216 (D. Conn. 2009) (Droney, J.) (internet website posting by a Texas resident that specifically targeted and maligned certain students by reference to the school they attended in Connecticut sufficed for long-arm jurisdiction under Conn. Gen. Stat. § 52-59b(a)(2) and its requirement that a defendant have "commit[ted] a tortious act within the state" of Connecticut).[6]

I likewise conclude that the exercise of jurisdiction over MarketNexus would not violate the Due Process Clause. It is sufficient that MarketNexus has posted statements that specifically target plaintiff and by reference to his business activities in Connecticut, and MarketNexus has not identified any particular obstacles that would make difficult its conduct of litigation in the District of Connecticut. *See, e.g., Calder v. Jones*, 465 U.S. 783, 788-90 (1984); *Directory Assistants*, 2013 WL 869671 at *3-*4; *Ciolli*, 611 F. Supp. 2d at 223.

### *Motion to Dismiss for Failure to State a Claim*

The background principles governing a Rule 12(b)(6) motion to dismiss are well established. The Court must accept as true all factual matters alleged in a complaint, although a complaint may not survive unless its factual recitations state a claim to relief that is plausible on

---

[6] Not to the contrary is *Best Van Lines, Inc. v. Walker,* 490 F.3d 239, 253 (2d Cir. 2007), in which the Second Circuit concluded that an out-of-state resident's posting on a website that maligned a New York company but that was not otherwise "purposefully directed to New Yorkers rather than a nationwide audience" did not constitute "transact[ing] any business within the state" of New York as required by the New York long-arm statute. *Id.* at 253. The focus of the long-arm statute provision in *Best Van Lines* was whether the defendant's statements amounted to "transact[ing] any business" in the forum state rather than whether—as in *Directory Assistants* and *Ciolli*—the defendants' Connecticut-directed statements amounted to engaging in a tortious act within the state.

its face. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014) (same).

Defendants contend that they are immune from liability for their statements on grounds of privilege. "A claim of privilege is an affirmative defense, which, if applicable at all, is far better suited to a motion for summary judgment than a motion to dismiss for failure to state a claim." *McNamee v. Clemens*, 762 F. Supp. 2d 584, 608 (E.D.N.Y. 2011). That is because "[w]hether or not the fair reporting privilege applies requires a determination of whether or not the report is 'substantially accurate,'" and "[a]pplication of the fair reporting privilege is inappropriate at the motion to dismiss stage if a reasonable jury could conclude that the report 'suggest[ed] more serious conduct than that actually suggested in the' judicial proceeding." *Bilinski v. Keith Haring Fdtn., Inc.*, 96 F. Supp. 3d 35, 48-49 (S.D.N.Y. 2015) (quoting *Karedes v. Ackerley Grp.*, 423 F.3d 107, 119 (2d Cir. 2005)). Here, it would be premature for me to rule at this time on defendants' claim of fair reporting or similar privileges.[7]

Defendants further argue that plaintiff's defamation claims are not pleaded with sufficient specificity. "Defamation is comprised of the torts of libel and slander: slander is oral defamation and libel is written defamation." *Skakel v. Grace*, 5 F. Supp.3d 199, 206 (D. Conn. 2014). Under Connecticut law, to establish a *prima facie* case of defamation, "a plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." *Ibid.*

Plaintiff's amended complaint alleges that defendants:

Wrote and published the Defamatory Statements on the Website with the knowledge and intent that these words were going to be viewed on the worldwide web. The libelous words

---

[7] Nor can I determine at the initial pleading stage—as the defendants request, Doc. #34—the applicability of the privilege on the basis of the confirmation of an arbitration award against plaintiff.

> contained in the Defamatory Statement are false and defamatory and were written with (a) malice and intent to injure and damage **PLAINTIFF**'S reputation by accusing **PLAINTIFF** of being dishonest business people, and (b) reckless reputation for the truth of the Defamatory Statements. The Defamatory Statement are libelous per se insofar as these words were written and insofar as these words injure **PLAINTIFF** of committing financial crimes which are punishable by imprisonment. The Defamatory Statements have damaged the **PLAINTIFF** in his respective businesses and occupations.

Doc. #24 at 11-12 ¶ 31-34. (internal paragraph numbers have been omitted).

The Amended Complaint also lists in great detail the content of allegedly defamatory statements. *Id.* at 8-11 ¶ 29-30. Moreover, for statute of limitations purposes, defendants have been put on notice that plaintiff is complaining about statements made on numerous dates such "as upon information and belief, no later than June 17, 2013." *Id.* at 8 ¶ 29a. The complaint is sufficiently specific for initial pleading purposes. *See Baez v. Jetblue Airways Corp*., 2009 WL 2447990, at *9 (E.D.N.Y. 2009). Accordingly, defendants' motions to dismiss for failure to state a claim will be denied.

***Defendants' Motion to Strike***

Defendants move to strike Paragraphs 4-22 of the amended complaint pursuant to Rule 12(f) for being impertinent and immaterial. Doc. #10 at 38. Courts in the Second Circuit are reluctant to strike material from a pleading. *Fraiser v. Stanley Black & Decker, Inc*., 2015 WL 3794377, at *3 (D. Conn. 2015). The allegations that defendants claim are immaterial and impertinent do provide a better understanding of the background facts, and thus are arguably proper in the absence of a showing of prejudice at this time. Defendants' motion to strike is denied without prejudice to be renewal in the event defendants are able to show prejudice at a later time.

**CONCLUSION**

Plaintiff's motion to remand (Doc. #8) is DENIED. Defendants' motion to dismiss for improper service of Buhl (Doc. #25) is GRANTED. Defendants' motion to dismiss for lack of jurisdiction over defendant Buhl (Doc. #25) is DENIED as it is moot in light of the Court's dismissal for improper service. Defendants' motion to dismiss for lack of jurisdiction over defendant MarketNexus (Doc. #25) is DENIED. Defendants' motion to dismiss for failure to state a claim (Doc. #25) is DENIED. Defendants' motion to strike (Doc. #25) is DENIED without prejudice, subject to renewal in the event defendants are able to demonstrate prejudice.

It is so ordered.

Dated at New Haven this 10th day of May 2016.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge